## JACK COMBS v. STATE.

No. A-7830. Sept. 5, 1931.
Dissenting Opinion Sept. 12, 1931.
(2 Pac. [2d] 1037.)

Cheatham & Beaver, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the superior court of Creek county of the crime of grand larceny, by the jury, who returned the following verdict:

"We, the jury impaneled and sworn in the above entitled cause, do upon our oaths, find the defendant guilty of grand larceny, and fix his punishment at eighteen months in the penitentiary, and we recommend that he be paroled to any person or institution who will take him in charge and provide whatever operation or medical attention, if any, be necessary."

Defendant assigns and argues numerous errors, but for the purpose of this opinion it will only be necessary to consider the second assignment, which is:

"The court erred in permitting the transcript of testimony of Ellis Abraham and Mrs. Ellis Abraham, taken at the preliminary hearing, to be read to the jury, and to be received in evidence at the trial of the defendant."

It appears from the record that the preliminary complaint was filed against the defendant on the 17th day of April, 1929, and a warrant duly issued for the arrest of the defendant; that on the 19th day of April, 1929, a preliminary hearing was had before the magistrate who issued the warrant. It further appears from the record that, when defendant was arraigned, the following proceedings were had:

"Mr. Cameron: Jack, are you ready for preliminary hearing? Jack Combs: Yes, sir. The Court: Jack, have you an attorney? Jack Combs: No. The Court: Are you going to get any? Jack Combs: Well, they wouldn't let me call up at Sapulpa. Mr. Cameron: If you want one we will give you time now to employ one. Jack Combs: I guess I don't want one."

Thereupon the state introduced its evidence, and at the conclusion of the testimony of each witness the following proceedings were had:

"The Court: Jack, do you want to ask the witness any questions? Jack Combs: No."

Thereupon, at the close of the state's evidence, the following proceedings were had:

"The Court: Jack, do you want to take the witness stand? Jack Combs: Well, I guess so. The Court: Just tell what you know about this business."

Thereupon the defendant gave a brief detail of how a man named Frank Schrivener asked him to get him a radio and how he went and got this one and was to have $20 for it. And thereupon the county attorney cross-examined the defendant and made him go into minute detail and tell all of the transaction.

At the time of the trial, the state filed an affidavit showing that the witnesses Ellis Abraham and Mrs. Ellis Abraham, who had testified at the preliminary examination, were out of the state and their presence could not be procured in the trial of the case, and asked the court for leave to read the transcript of the evidence of these witnesses to the jury, to which defendant objected for the reason that defendant was not represented by counsel and did not conduct a cross-examination of the witnesses, and that the admission of this testimony would be to deny him his constitutional right to be confronted by the witnesses and to have them cross-examined by counsel competent to conduct such examination.

Article 2, § 20, Constitution of Oklahoma, provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: Provided, that the venue may be changed to some other county of the state, on the application of the accused, in such manner as may be prescribed by law. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be con-

fronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their post-office addresses."

Section 2349, C. O. S. 1921, provides:

"In a criminal action the defendant is entitled:

"First. To a speedy and public trial.

"Second. To be allowed counsel, as in civil actions, or to appear and defend in person and with counsel; and

"Third. To produce witnesses on his behalf, and to be confronted with the witnesses against him in the presence of the court."

The general rule is that, when a witness has testified at one trial and defendant has had an opportunity to cross-examine him, and upon a subsequent trial said witness is dead or absent from the state, his testimony taken at the first trial may be used by the state. 16 Corpus Juris, 839.

For a full discussion of this question, see Williams v. State, 42 Okla. Cr. 319, 276 Pac. 515.

The general, if not the universal, holding of the courts is that the essential purpose of the constitutional provision is to secure to the accused the right to cross-examine, and, if he has once enjoyed that right, no constitutional provision is violated by admission of the evidence of such witness who is dead or absent from the state at the subsequent trial.

In Blagg v. State, 36 Okla. Cr. 337, 254 Pac. 506, this court said:

"The accused may waive his constitutional right to meet the witnesses face to face."

This general rule of course presupposes sufficient mental capacity in the defendant to understand the import of the proceedings and to comprehend the necessity of counsel to protect him in his constitutional and statutory rights.

In the case at bar the evidence is that the defendant was shot in the nose when he was about eleven years of age and some hard substance was lodged in his head, and that since that time he had been at times irrational and mentally incompetent and possessed of a mania for taking the property of other people apparently without any definite purpose or idea of ownership or responsibility. The verdict of the jury practically amounts to a finding of criminal insanity.

The only evidence offered by the state to prove the corpus delicti was that of the absent witnesses, the transcript of whose testimony was read to the jury over the objection of defendant, and without which evidence the defendant could not have been convicted. It cannot be said in cases of this kind that the same rule applies, but rather that defendant's lack of mental capacity and the fact that he was not represented by counsel would render such evidence inadmissible.

If the defendant had been represented by counsel and had an opportunity to cross-examine the witness and failed to do so, he could not complain, and the evidence would have been admissible. But the facts in the case at bar are far different to those covered by the general rule, in that defendant was not represented by counsel and in that the whole record, including the verdict of the jury, indicates that he was of unsound mind and unable to

cross-examine the witnesses or to waive his right to counsel. It was reversible error, therefore, for the court to admit this evidence over defendant's timely objections.

For the reasons stated, the cause is reversed.

DAVENPORT, P. J., concurs.

EDWARDS, J. (dissenting). I am unable to assent to the majority opinion. Defendant was charged with grand larceny. He had a preliminary trial at which the state introduced testimony of witnesses and defendant testified in his own behalf. He was held for the district court. An information was filed and came on duly for trial in the district court. The defense was insanity, or rather that defendant was a confirmed kleptomaniac. At the trial two material witnesses for the state were absent. The state made a sufficient showing, and a transcript of the testimony of the two witnesses taken at the preliminary was admitted in evidence. The jury returned its verdict finding defendant guilty, and in addition added a recommendation, which the majority opinion treats as surplusage. The case is reversed, because a transcript of the testimony of the witnesses taken at the preliminary was introduced in evidence. This opinion overturns two well-settled rules of this court, each supported by a long line of authorities: First, that this court will not reverse a case on the weight of the evidence where there is substantial evidence supporting the verdict. Second, where a witness has testified at the preliminary and defendant had the opportunity to cross-examine the witness, and his testimony is preserved, if the witness, with proper diligence cannot be produced at the final trial, a transcript of his testimony so taken is admissible. The verdict of the jury is a finding against defendant's claim of insanity and a finding that he is responsible for the crime com-

mitted. The majority opinion holds that, because defendant did not have the ability to cross-examine the witnesses introduced at the preliminary, the transcript of their testimony is not admissible, and because the court admitted it he is therefore entitled to a new trial. This decision sets at naught the many decisions of this court announced from its existence till the present time that the jury are the triers of the facts and their verdict will not be disturbed on the weight of the evidence when there is any evidence to sustain it. It invades the province of the jury and decides that defendant was not mentally qualified to cross-examine the witnesses at his preliminary trial. If this case is to be followed, the transcript of an absent witness would never be admissible in a case where a defendant did not have an attorney at his preliminary examination, unless the defendant were himself an attorney and capable of cross-examining the witnesses.

The majority opinion quotes article 2, § 20, of the Constitution, and section 2349, Comp. St. 1921, that a defendant is entitled to counsel and to a speedy trial. The record and the opinion shows that the magistrate offered defendant time to procure counsel, if he wanted it, and he answered: "I guess I don't want one." There is no provision in this state for the appointment of counsel for an accused before a committing magistrate, and yet the majority opinion uses this language:

"If the defendant had been represented by counsel and had an opportunity to cross-examine the witnesses and failed to do so, he could not complain, and the evidence would have been admissible."

If this is the law, defendant who expects to interpose the well-worn plea of insanity, or, as in this case, "the irresistible impulse to steal," should always appear before

the committing magistrate without counsel, for, by the rule announced in this case, the testimony of the witnesses taken at the preliminary in such case would not be competent against him in the final trial.

For these reasons, I dissent.